Charles M. RILEY, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1–1078A308.

Court of Appeals of Indiana,
First District.

May 22, 1979.

Rehearing Denied June 25, 1979.

Theodore L. Sendak, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Charles M. Riley (Riley) was found guilty in trial by jury on two counts of violation of *Ind.Code* 35–30–10.1–2 for distribution of obscene matter.[1]

Riley appeals, claiming three grounds of error. First, the statute under which he was found guilty was unconstitutional because of vagueness. Second, the trial court erred in refusing to give an instruction tendered by Riley. Third, the verdict was not supported by sufficient evidence.

We affirm.

The facts surrounding the case are that two police officers entered the Century Adult Book Store in Columbus on October 7, 1977, and purchased from an employee matter which the officers considered to be obscene. The officers did not see Riley in the store at that time and Riley did not directly sell the matter to the officers.

Riley was arrested for knowingly offering and distributing obscene matter based on this incident of October 7. The crux of the State's case was that Riley had a proprietary or managerial position in the bookstore. Two employees of the bookstore were presented as witnesses by the State for this purpose. Riley did not take the stand.

The first issue we consider is whether the statute is unconstitutionally vague. Riley claims vague language in the definitional statute IC 35–30–10.1–1(c) and (d), which reads:

> (c) A matter or performance is "obscene" if:
>
> (1) the average person, applying contemporary community standards, finds that the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex;

Patrick W. Harrison, Columbus, for appellant.

---

1. Ind.Code 35–30–10.1–2 reads in pertinent part:

    A person who knowingly or intentionally . . . (2) offers to distribute, distributes or exhibits to another person obscene matter; commits a Class A misdemeanor. . . .

(2) the matter or performance depicts or describes, in a patently offensive way, sexual conduct; and

(3) the matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value.

(d) "Sexual conduct" means (i) sexual intercourse or deviate sexual conduct; (ii) exhibition of the uncovered genitals in the context of masturbation or other sexual activity; (iii) exhibition of the uncovered genitals of a person under sixteen (16) years of age; (iv) sado-masochistic abuse; or (v) sexual intercourse or deviate sexual conduct with an animal.

We note that the Indiana statute follows the guidelines set out by the United States Supreme Court in *Miller v. California*, (1973) 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, almost word for word. The guidelines set the permissible scope of state regulation of obscene material weighed against First Amendment considerations. Using the guidelines, as found in IC 35–30–10.1–1(c), and specifically defined sexual conduct, such as found in IC 35–30–10.1–1(d), the Supreme Court stated, "[w]e are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution." *Miller, supra*, 413 U.S. at 27, 93 S.Ct. at 2616–2617. Yet Riley contends that the language found in the statute and *Miller* "enhances" the vagueness problem and that the statute is not sufficiently certain to show what the legislature intended to prohibit.

■ The standard of specificity in Indiana is that a statute will not be found unconstitutionally vague if individuals of ordinary intelligence would comprehend it to adequately inform them of the conduct to be proscribed. *Sumpter v. State*, (1974) 261 Ind. 471, 306 N.E.2d 95; *Hunter v. State*, (1977) Ind.App., 360 N.E. 588.

And it has been stated in *Roth v. United States*, (1957) 354 U.S. 476, 491–492, 77 S.Ct. 1304, 1312–1313, 1 L.Ed.2d 1498:

Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. "* * * [T]he Constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * * [t]hat there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense * * *." [footnotes and citations omitted].

■ We determine that the statutes are sufficiently clear as to give notice of the conduct proscribed.

The second issue on review is whether the trial court erred in refusing to give the following instruction:

Defendant is charged in Count I and II with distributing obscene material. However, if you find that Defendant did not personally distribute the materials or was not present when the materials were distributed, Defendant should not be found guilty in Counts I and II.

We combine examination of this issue with one of the points raised under sufficiency of the evidence. This issue is that there is no evidence that Riley personally sold the matter and thus, a material element of the crime—distribution—is missing.

"Distributes" is defined in IC 35–30–10.-1–1(g) as meaning "to transfer possession for a consideration."

As we see it, the question before us is whether distribution of obscene matter is meant to proscribe only direct face-to-face sales or whether those in a managerial or proprietary position in the distribution process can be liable as well.

■ Although Riley does not bother to mention the principle, we are aware that a criminal statute should be strictly construed against the State. *State v. Bigbee*, (1973) 260 Ind. 90, 292 N.E.2d 609; *Hutcherson v.*

*State,* (1978) Ind.App., 382 N.E.2d 983. However, we also recognize the principle that we should not overly narrow a statute so as to exclude cases fairly covered by it and that we should interpret so as to give efficient operation to the expressed intent of the legislature. *Bigbee, supra,* at 611.

To help in the interpretation of the statute, we note IC 35–30–11.1–1 *et seq.,* titled "Providing Obscene Matter and Performance before Minors," which, unlike IC 35–30–10.1–1 *et seq.* has a "defenses" section. (IC 35–30–11.1–3). In that section under (d), it is an affirmative defense that the defendant "was a salesclerk, motion picture projectionist, usher, or ticket taker, acting within the scope of his employment, provided that he had no financial interest in the place wherein he was so employed." While we recognize that this section has no force of law to the statute before us, it is noteworthy that the section exempts lower-level employees, leaving criminal liability presumably for those with a financial, managerial or proprietary interest in the provision of obscene matter. We also note the defense is not inherently particular to the protection of minors. When we turn to an examination of the term "distribute" in IC 35–30–10.1–2, it is doubtful that the legislature would mean to exclude all in the distribution process except those who directly sell obscene matter—particularly since those direct sellers would be the salesclerks and similar employees excluded from liability under IC 35–30–11.1–3. It is difficult to believe that the legislature would exempt those in the position of responsibility and financial gain from liability under the statute merely because they do not make the direct sale.

■ We determine, then, that defendants' tendered instruction does not correctly state the law, and thus, there was no error in the court's refusal. *Lockridge v. State,* (1975) 263 Ind. 678, 338 N.E.2d 275. Also, there is no sufficiency of the evidence issue here since personal distribution is not a material element of the offense.

■ We turn then to the third claim of error raised by Riley and that is the suffi-

ciency of the evidence on several material elements of the crime. This court has consistently held that in reviewing the sufficiency of the evidence we do not weigh the evidence or judge credibility. We consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. When there is substantial evidence of probative value supporting the jury's verdict, the conviction will not be set aside. *Poindexter v. State,* (1978) Ind., 374 N.E.2d 509; *Grigsby v. State,* (1978) Ind., 371 N.E.2d 384; *Henderson v. State,* (1976) 264 Ind. 334, 343 N.E.2d 776. The triers of fact may draw reasonable inferences from facts established either by direct or circumstantial evidence, and a guilty verdict may be based upon circumstantial evidence. *Medsker v. State,* (1968) 249 Ind. 369, 232 N.E.2d 869.

■ Riley first contends that there is not sufficient evidence to show that he knew the specific content of the matter purchased by the officers. While knowledge is constitutionally required, *Smith v. California,* (1959) 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205, and required under the statute, we are not convinced that it must be shown that Riley knew the exact content of the particular items sold. "Knowingly" is defined in IC 35–41–2–2(b) as: "[a] person engages in conduct 'knowingly' if, when he engages in the conduct he is aware of a high probability that he is doing so." We feel it is enough to show that the defendant is aware or knows of the nature and character of the material being distributed in general. *See Mishkin v. New York,* (1966) 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56; *Ginsberg v. New York* (1968) 390 U.S. 629. The Texas Appellate Court has made a valuable point in this regard when considering the crime of exhibiting obscene matters. *Volkland v. State,* (1974) Tex.Cr.App., 510 S.W.2d 585, 587, states:

It need not be shown that appellant actually looked at the particular magazine introduced into evidence. It is clear from the record that appellant knew the type of business he was in and the type of material he was exhibiting for sale. One

cannot negate a showing of knowledge by displaying such a large quantity of books and magazines all of this same type that he can deny particular knowledge as to each and every individual item.

■ We further note that knowledge or intent may be inferred from the facts or circumstances presented in each case. *Schroer v. State*, (1974) 159 Ind.App. 522, 307 N.E.2d 887; *People v. Rode*, (1978) 57 Ill.App.3d 645, 15 Ill.Dec. 259, 262, 373 N.E.2d 605, 608. There is sufficient evidence here to show that Riley knowingly distributed obscene matter. The "adult" bookstore had the typical notices outside warning minors and those offended by nudity to stay away. Riley ordered inventory and looked through at least some magazines. The covers of the magazines and film boxes depicted sexual activity. In sum, we have no doubt of the sufficiency of the evidence in this regard.

Riley also claims that there is not sufficient evidence to show that he was owner of the establishment. We feel there is sufficient evidence to show at least a managerial, if not a proprietary or financial interest. Riley ordered inventory; he hired, trained and had fired employees. He handled the money and, in general, directed the operation. Riley had the retail certificate name changed from his own to his girlfriend's name. Again, there is sufficient evidence to show Riley's participation in the distribution of the obscene matter.

Judgment affirmed.

LOWDERMILK, P. J., and LYBROOK, J., concur.