James Thomas RINGLEY,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–279A41.

Court of Appeals of Indiana,
First District.

Oct. 16, 1979.

Keith A. Dilworth, Public Defender, Richmond, for defendant-appellant.

Theodore L. Sendak, Atty. Gen., Victoria Van Duren, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

Defendant-appellant James Thomas Ringley was found guilty of Uttering a Forged Instrument[1] and sentenced to be imprisoned for not less than two nor more than fourteen years.

Ringley presents the following issues for our review:

(1) Whether the trial court erred by admitting State's Exhibit No. 11 into evidence.

(2) Whether the trial court erred by admitting Ringley's oral statement into evidence.

(3) Whether the trial court erred by admitting State's Exhibit No. 12 into evidence.

(4) Whether the trial court erred in refusing Ringley's Instructions Nos. 1 through 3.

(5) Whether there was sufficient evidence introduced at trial to support the verdict of the jury.

We affirm.

The pertinent facts of this case are as follows:

Ringley was living at an address where Gary Durbin had previously resided. When Durbin's unemployment check was delivered in the mail, Ringley endorsed the check with both his and Durbin's names, and cashed the check at a bank. The State Auditor's office returned the check to the bank indicating that it was an "alleged forgery." In a conversation, Ringley admitted to Durbin that he had signed Durbin's name and cashed the check. After Ringley was arrested, he was read his *Miranda* rights, but he refused to sign State's Exhibit No. 11, a warning and waiver form. The police asked Ringley for a handwriting sample on the day of his arrest, and, during the giving of the sample, he admitted signing Durbin's name on the check. Another admission of guilt was given by Ringley at trial. Handwriting analysis introduced at trial indicated that Ringley signed both names on the check.

### I.

■ Ringley claims that the trial court erred by admitting State's Exhibit No. 11, the unsigned warning and waiver form, arguing that it was irrelevant, immaterial and prejudicial to his case. Ringley's objection at trial was, "Only as to relevance and materiality in this case." Such a general objection raises no question for appeal. *Williams v. State,* (1907) 168 Ind. 87, 79 N.E. 1079.

### II.

■ Ringley alleges that the trial court erred by allowing into evidence oral statement that he made while in custody, since he claims the statement was not made voluntarily. Although there was an objection to the oral statement at a hearing outside the presence of the jury, Ringley concedes that there was no objection to the admissibility of the statement on the record during the trial. A long line of Indiana cases has held that if a motion to suppress has been denied before the trial, there must be an objection to the admissibility of the evidence at trial or the issue will be waived. *Harrison v. State,* (1972) 258 Ind. 359, 281 N.E.2d 98. However, Ringley argues that he relied on *Lockridge v. State,* (1975) 263 Ind. 678, 338 N.E.2d 275, which said that if an issue was decided in a pre-trial hearing, the issue was not waived even though there was no objection at trial. He claims that *Lockridge* was in effect at the time of his trial in December, 1977. Shortly after Ringley's trial, *Pointon v. State,* (1978) Ind., 372 N.E.2d 1159, expressly overturned *Lockridge* and retroactively implemented the former *Harrison* rule requiring an objection at trial. We also retroactively apply *Pointon* and hold that the issue was waived.

1. Ind.Code 35-1-124-1, since repealed.

██ Even if Ringley had not waived the issue, he could not have been prejudiced ·by the admission of the statement. In addition to making the statement in the police station, Ringley took the stand and admitted his guilt. He also admitted committing the crime to Durbin. Furthermore, handwriting analysis showed that Ringley made both signatures on the check. If the introduction of inadmissible evidence is not decisive of guilt, but is merely cumulative, it is not prejudicial error. *Johnson v. State,* (1973) 157 Ind.App. 105, 299 N.E.2d 194. In any event, the record shows that Ringley was not being questioned by the police officer when he made his statement. Volunteered statements are not barred by the Fifth Amendment. *Jennings v. State,* (1974) 262 Ind. 476, 318 N.E.2d 358.

### III.

██ Ringley claims that the trial court erred by admitting into evidence State's Exhibit No. 12, Ringley's driver's license.

He argues that a chain of custody was not established.

In *Wolfe v. State,* (1978) Ind., 383 N.E.2d 317, 318, our Supreme Court said:

"The purpose of the chain of custody rule is the avoidance of any claims of substitution, tampering or mistake. . . A chain must be established where the evidence lacks sufficient identifiable characteristics. However, 'where the evidence is such that it may be recognized and identified by witnesses, and where tampering or alteration relevant to the purpose to be served by the evidence is not a realistic threat, no chain of custody need be established.' . . ." (Citations omitted)

A driver's license, being a unique document, fits this category of non-fungible evidence and no chain of custody needed to be established. Ringley's driver's license was part of his personal effects which were confiscated at the time of his arrest. Ringley has failed to introduce any evidence that the driver's license was tampered with, and he has not supported any argument that there was a disagreement as to the identity of the driver's license. Thus, the trial court did not commit error.

### IV.

Ringley alleges that the trial court committed error by refusing his Instructions Nos. 1, 2 and 3 which read as follows:

#### "DEFENDANT'S TENDERED INSTRUCTION NO. 1

The Court instructs the jury that mere probabilities are not sufficient to warrant a conviction nor is it sufficient that the greater weight of preponderance of the evidence supports the allegations of the affidavit, nor is it sufficient that upon the doctrine of chance it is more probable that the defendant is guilty than innocent; the law requires, in order to warrant the conviction of a defendant, that he must be proven guilty so clearly and conclusively that there is no reasonable theory upon which he can be held to be innocent, when all the evidence is considered together."

#### "DEFENDANT'S TENDERED INSTRUCTION NO. 2

Theft, by statute, as it pertains to this case, is defined as follows:

'A person commits theft when he (1) knowingly: (a) obtains or exerts unauthorized control over property of the owner, and . . . (2)(a) intends to deprive the owner permanently of the use or benefit of the property . .'

Another section of that statute provides for the penalty in the event of a conviction on the above defined crime of Theft, as follows:

'A person convicted of theft of property, not from the person, and of less than One Hundred Dollars ($100.00) in value shall, except as otherwise provided in this section, be fined not more than Five Hundred Dollars ($500.00) or imprisoned for not more than one (1) year, or both, or such person may be imprisoned in the State Prison for not

less than one (1) year nor more than five (5) years, and fined in a sum not exceeding Five Hundred Dollars ($500.00) and be disenfranchised and rendered incapable of holding any office of profit or trust for any determinate period.'"

## "DEFENDANT'S TENDERED INSTRUCTION NO. 3

Under the law of the State of Indiana the following definitions apply to the crime of Theft:

(1) 'Knowingly' means that a person knows or is consciously aware of his or her acts.

(2) 'Obtains or exerts control over property' includes taking, carrying, concealment or possession of the property.

(3) 'Owner' means a person who has possession of or an interest in the property involved.

(4) 'Permanently deprive' means to deprive the owner permanently of the beneficial use of the property.

(5) 'Property' means anything of value."

Ringley states that his Instruction No. 1 is a reasonable doubt instruction. He also characterizes Instruction No. 4, given by the court, as a reasonable doubt instruction. The latter read as follows:

"A reasonable doubt is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all the evidence and circumstances in the case. It should be a doubt based upon reason and common sense and not a doubt based upon imagination or speculation.

If, after considering all the evidence, you have reached such a belief in the guilt of the defendant that you would feel safe to act upon that belief without hesitation, in a matter of the highest concern and importance to you, when you would not be required to act at all, then you will have reached the degree of certainty which excludes reasonable doubt and authorizes a conviction.

The rule of law which requires proof of guilt beyond a reasonable doubt applies to each juror individually."

■ The court's Instruction No. 4 was substantially the same as the defendant's Instruction No. 1. It is not error to refuse an instruction if the substance of the instruction is adequately covered by another instruction given by the court. *Patterson v. State,* (1978) Ind., 371 N.E.2d 1309.

■ Ringley acknowledges that he tendered Instructions Nos. 2 and 3 based on the proposition that Theft is a lesser included offense of Uttering a Forged Instrument. Uttering a Forged Instrument under Ind.Code 35–1–124–1 has no lesser included offenses. *Angel v. State,* (1973) 155 Ind.App. 242, 292 N.E.2d 268. The trial court committed no error by refusing tendered instructions which incorrectly state the law. *See Smith v. State,* (1979) Ind., 388 N.E.2d 484.

The trial court committed no error in refusing the three instructions tendered by the defendant.

## V.

■ Ringley claims that the jury verdict was not supported by sufficient evidence on the element of intent to defraud. When we review the sufficiency of the evidence, we cannot judge the credibility of the witnesses, nor weigh the evidence, but we consider the evidence most favorable to the State and the reasonable inferences therefrom which support the verdict of the trial court or jury. When there is evidence of probative value from which the jury could determine that the appellant was guilty beyond a reasonable doubt, we must affirm the conviction. *Boyking v. State,* (1979) Ind., 385 N.E.2d 1127.

■ As we consider the sufficiency of evidence on intent, we note that intent may be inferred from the circumstances or facts set forth in each case. *Schroer v. State,* (1974) 159 Ind.App. 522, 307 N.E.2d 887. From the facts in the case at bar the trier could infer that Ringley intended to defraud the bank. His act of presenting the

check to be cashed is sufficient to show that Ringley intended to deprive Durbin of his money. *McHaney v. State,* (1972) 153 Ind. App. 590, 288 N.E.2d 284.

For the reasons stated above, the decision of the trial court must be affirmed.

Affirmed.

LOWDERMILK and ROBERTSON, JJ., concur.