Greg M. SHIVELY, Appellant,

v.

STATE of Indiana, Appellee.

No. 82S00–9008–CR–535.

Supreme Court of Indiana.

Sept. 20, 1991.

Barry L. Standley, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received a sentence of fifty (50) years, enhanced by thirty (30) years by reason of his status as a habitual offender.

The facts are: Appellant and the victim, James Goff, both resided at the Evansville Rescue Mission. During the day of October 24, 1989, appellant consumed a considerable amount of alcoholic beverages and engaged in confrontations with Goff concerning a cat over which they both claimed ownership. At one point, they engaged in physical combat with Goff getting the better of appellant. This caused appellant to state that he was a lighter sleeper than Goff and that he would get even with him "penitentiary style."

Both men had received abrasions during the altercation. After showering, Goff went to the office of the mission to obtain bandages for his abrasions. While Goff was standing in the office with one foot on a chair applying a bandage to an abrasion on his leg, appellant approached the office. When he saw Goff, he rushed forward, and as Goff straightened up, he was struck in the lower breast bone by a knife wielded by appellant. The knife cut through the bone and penetrated the heart. Appellant withdrew the knife and again stabbed Goff in the upper arm. Goff died of the wound in the chest.

Appellant immediately left the mission and went to his mother's home where he was apprehended by officers. The arresting officer testified that appellant admitted to the stabbing. Appellant testified that he believed Goff was about to attack him because he saw something in Goff's hand. Thus he obtained the knife he carried fastened to his lower right leg and swung at Goff to defend himself from what he perceived to be an imminent attack.

Appellant claims the trial court erred in admitting autopsy photographs designated State's Exhibits Nos. 8 and 9, which show, from different angles, a probe sticking in the opened chest of the victim. He contends these photographs are gruesome and were introduced by the State solely for the purpose of inflaming the jury. He cites *Thacker v. State* (1990), Ind., 556 N.E.2d 1315, which in turn cites *Kiefer v. State* (1958), 239 Ind. 103, 153 N.E.2d 899.

The State did not present Exhibits 8 and 9 during its initial examination of the pathologist. On cross-examination, defense counsel implied that the doctor was in error, or at least confused, as to the angle of the fatal wound. On redirect examination, the State tendered the exhibits to verify the wound angle as testified to by the doctor.

An examination of the exhibits discloses that they in fact do depict the chest of the victim after it had been opened for autopsy. However, the photographs are so close they show only the angle of the wound and a portion of the opened chest. Seeing the photographs alone, without further explanation, one would not be able to discern that it in fact was a portion of a human body.

When one couples the photographs with their explanation by the doctor, they do present a somewhat gruesome aspect. We have often stated that the gruesome aspect of photographs is not in itself sufficient to render them inadmissible unless they were without relevance to any material issue in the case. *Perigo v. State* (1989), Ind., 541 N.E.2d 936; *Wolfe v. State* (1987), Ind., 512 N.E.2d 185.

In the case at bar, appellant's counsel raised the issue as to the possibility that the doctor had erred in his testimony regarding the angle of the wound. This certainly made the angle a potential issue in the case, and the State was justified in offering the exhibits on redirect examination. The trial court did not err in its finding that the exhibits in fact were pertinent and that that pertinency overrode the gruesome nature of the photographs. We see no error here.

■ Appellant argues his conviction for murder is not supported by sufficient evidence. He maintains that the evidence supports his claim of self-defense as defined in Ind.Code § 35–41–3–2(a). He further correctly points out that when the claim of self-defense is raised, the burden then falls upon the State to negate the claim, citing *Bryan v. State* (1983), Ind., 450 N.E.2d 53; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

■ However, in the case at bar, we have the threat of appellant to get even with Goff as well as his statement that he would do it "penitentiary style." Appellant testified that as he approached Goff in the mission office, he thought that Goff had a weapon in his hand; therefore, he retrieved the knife strapped to his lower right leg to defend himself in what he believed to be an imminent attack.

However, the testimony of witnesses contradicts appellant's version. It was appellant who rushed toward Goff. Goff merely straightened up as appellant approached. The witnesses observed appellant walk slowly to the office door then rush toward Goff. The jury was justified upon hearing this testimony to believe that appellant did not take the time to retrieve a knife strapped to his leg, but that he was holding the knife in his hand, when he rushed toward Goff and stabbed him. The jury could deduce from the evidence that appellant was using a deadly weapon in a manner calculated to cause death in view of the position of the initial stab wound and the fact that it penetrated the victim's heart. *See Elliott v. State* (1988), Ind., 528 N.E.2d 87.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.