**John R. LEWIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 49A02–0110–CR–698.**

Court of Appeals of Indiana.

Aug. 28, 2002.

Kurt A. Young, Nashville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, John R. Lewis, challenges the sufficiency of the evidence supporting his conviction for Forgery, a Class C felony.[1] We affirm.

The facts most favorable to the trial court's judgment reveal that on November 28, 2000, Lewis opened a checking account at Harvester Federal Credit Union ("Harvester") in Marion County. Lewis opened the account in the name of "JR Lewis doing business as Special Enforcement Agency." Transcript at 9. On January 31, 2001, Harvester sent Lewis a letter stating that the account was being closed due to "the amount of NSF activity." State's Exhibit 1. On February 23, 2001, Lewis presented a check, numbered 5705, to a cashier at a gasoline station. The name on the check was "JR.Lewis," and was drawn on "Harvest [sic] F.C.U." Appendix at 16. The cashier questioned the check "because it [did]n't look like a regular check."

---

1. Ind.Code § 35–43–5–2 (Burns Code Ed.    Repl.1998).

Transcript at 22. Despite her reservations, the cashier accepted the check.[2]

Eventually, Harvester office manager Monica Burns contacted the Indiana State Police, and State Police Detective Frank Simmons interviewed Lewis on March 15, 2001, regarding the check. Lewis admitted to Detective Simmons that he had printed the check from his home computer, signed it, and tendered it to the cashier. Although he claimed to have inadvertently put the wrong account information on the check, Lewis admitted that he had received the letter informing him that the checking account with Harvester had been closed.

On April 2, 2001, the State charged Lewis with forgery and theft.` Eventually, a bench trial was held on September 27, 2001, and the trial court found Lewis guilty of both charged offenses.

■ Upon appeal, Lewis claims that the evidence presented at trial is insufficient to support his forgery conviction. When reviewing a claim of insufficient evidence, we neither reweigh evidence nor judge witness credibility. *Lycan v. State,* 671 N.E.2d 447, 456 (Ind.Ct.App.1996). We consider only that evidence favorable to the trial court's judgment, along with any reasonable inferences to be drawn therefrom, and determine whether there was sufficient evidence of probative value to support the conviction. *Id.*

Tracking the language of the forgery statute,[3] the charging information against Lewis reads in pertinent part:

"John Lewis ... on or about February 23, 2001, did, with intent to defraud, utter to Naomi [sic] Arce a written instrument, that is: a check that purported to be on a Harvest (sic) F.C.U. account, check number 5705 ... in such a manner that said instrument purported to have been made by authority of Harvester Federal Credit Union, who did not give authority." Appendix at 16.

Upon appeal, Lewis admits that he prepared, signed, and uttered the check. Nevertheless, Lewis claims that the State presented insufficient evidence to support his conviction in that "the [S]tate did not prove that the instrument was uttered in such a manner that it purported to have been made by the authority of any person whose authority was necessary for it to have been made." Appellant's Brief at 6.

■ Lewis claims that he did not need the authority of Harvester to make the check he uttered, citing Indiana Code Section 26–1–3.1–103 (Burns Code Ed. Supp. 2002). Pursuant to this Section, " 'Maker' means a person who signs or is identified in a note as a person undertaking to pay," and " 'Drawee' means a person ordered in a draft to make payment." *Id.* Thus, Lewis claims that he was the maker of the check, not Harvester, who is the drawee. Nevertheless, even if these definitions supported his contention, Lewis fails to mention that Section 103 limits the applicability of its definitions to Chapter 26–1–3.1, a portion of the Uniform Commercial Code

---

2. Subsequent evidence reflected that the routing number on the check was not in the proper location, and the check had a different account number than Lewis's closed checking account.

3. The forgery statute reads as follows:
"A person who, with intent to defraud, makes or utters a written instrument in such a manner that it purports to have been made:
(1) By another person;
(2) At another time;
(3) With different provisions; or
(4) By authority of one who did not give authority; commits forgery, a Class C felony." I.C. § 35–43–5–2.

which covers negotiable instruments.[4] Although a check is a negotiable instrument, the applicable statute states that " 'Make' means to draw, prepare, complete, counterfeit, copy or otherwise reproduce, or alter any written instrument in whole or in part." Ind.Code § 35–43–5–1(*l*) (Burns Code Ed. Supp.2002).

■ The State did not allege that Harvester was the maker of the check. In fact, it did not allege that Lewis made the check. Instead, the State alleged that the check was *uttered* by Lewis, with intent to defraud, in such a manner that it purported to have been *made by authority* of Harvester. Therefore, the definitions cited by Lewis do not support his argument that he did not require Harvester's authority to make the check. In addition, we can safely say that one requires the authority of a bank before one may properly write or utter a check purported to be drawn upon an account with that bank. Likewise, when one utters a check that purports to have been drawn upon a non-existent account with a bank, one does so without the bank's authority.

Here, Lewis prepared the check on his home computer without the authority of Harvester. The account name and number did not match the closed account Lewis had previously opened with Harvester. Lewis admitted to Detective Simmons that he had received the letter from Harvester informing him that his account had been closed. Nevertheless, Lewis presented this check at the gas station to pay for goods in the amount of $47.00. From this the trial court could reasonably conclude that Lewis, with intent to defraud, uttered the check in question in a manner that it purported to have been prepared by the authority of Harvester and that Harvester gave no such authority. This is what the forgery statute proscribes, and the State presented sufficient evidence to support Lewis's conviction.

■ Lewis also argues that the evidence shows that he committed, at most, the crime of Check Deception as a Class A misdemeanor.[5] Lewis cites *Moore v. State*, 550 N.E.2d 318 (Ind.1990), and *Ringley v. State*, 182 Ind.App. 424, 395 N.E.2d 339 (1979), for the proposition that forgery has no lesser included offenses. From this Lewis concludes that, if the evidence shows that he committed the crime of check deception, he cannot also be guilty of forgery. We note, however, that both *Moore* and *Ringley* were decided prior to the decision of our Supreme Court in *Wright v. State*, 658 N.E.2d 563, 566–67 (Ind.1995), setting forth the analysis to be used to determine whether a lesser crime is included within the crime charged. Although it seems clear that, pursuant to the analysis set forth in *Wright*, the crime of check deception is not an inherently lesser included offense of forgery, one might reasonably argue that, under *Wright*, the crime of check deception was factually included in the information charging Lewis with forgery. *See id.* For Lewis to have intended to defraud, he must have known that the check he uttered would not be honored by Harvester, with whom he no longer had a checking account.

■ Be that as it may, as noted by the Court in *Moore*, the essence of the crime

---

4. *See* Ind.Code § 26–1–3.1–101 (Burns Code Ed. Supp.2002).

5. "A person who knowingly or intentionally issues or delivers a check, a draft, or an order on a credit institution for the payment of or to acquire money or other property, knowing that it will not be paid or honored by the credit institution upon presentment in the usual course of business, commits check deception, a Class A misdemeanor." Ind.Code § 35–43–5–5(a) (Burns Code Ed. Repl.1998).

of check deception "is the making or drawing of a check without sufficient funds for its payment." 550 N.E.2d at 320 (citing *Hazelgrove v. State*, 237 Ind. 350, 145 N.E.2d 13 (1957)). This is not what Lewis was charged with. He was instead charged with uttering a check, with intent to defraud, in such a manner that it purported to have been made on a Harvester account, i.e., with Harvester's authority, when Harvester had clearly withdrawn its permission for Lewis to write any checks via the letter informing him that his account had been closed. While it might have been possible for the State to charge Lewis with check deception, he was charged with forgery, and as discussed above, the evidence was sufficient to support such a conviction.

The judgment of the trial court is affirmed.

BAKER, J., and DARDEN, J., concur.